# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| TERESA BUSHBERGER, AMY VEGA, BARBARA LAKKARD, and SHARON MEYER Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> vs. <br><br> PORTFOLIO RECOVERY ASSOCIATES, LLC, <br><br> Defendant. | Case No.: 17-cv-786 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Teresa Bushberger is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Amy Vega is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Barbara Lakkard is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Plaintiff Sharon Meyer is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

7. Plaintiffs are each a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from them a debt allegedly incurred for personal, family or household purposes.

8. Plaintiffs are each also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that they engaged in a consumer transaction.

9. Defendant Portfolio Recovery Associates, LLC ("Portfolio") is a debt collection agency with its principal place of business located at 120 Corporate Blvd., Norfolk, VA 23502.

10. Portfolio is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

11. Portfolio is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Portfolio is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Bushberger Letters*

12. On or about October 20, 2016, Portfolio mailed a debt collection letter to Plaintiff Bushberger regarding an alleged debt, allegedly originally owed to "Original Creditor: COMENITY BANK" ("Comenity") and "Creditor to Whom Debt is Owed: Portfolio Recovery Associates, LLC" ("Portfolio"). A copy of this letter is attached to this complaint as Exhibit A.

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

2

14. Upon information and belief, Exhibit A is a form debt collection letter used by Portfolio to attempt to collect alleged debts.

15. Exhibit A lists the address of the original creditor, Comenity, directly above the statement of the creditor to whom the debt is owed as follows:

```
Seller: COMENITY BANK FORMERLY KNOWN AS WORLD FINANCIAL NETWORK BANK
Merchant: BOSTON STORE
Original Creditor: COMENITY BANK
Original Creditor Address: ONE RIGHTER PKWY SUITE 100, WILMINGTON DE 19803
Creditor to Whom Debt is Owed: PORTFOLIO RECOVERY ASSOCIATES, LLC
```

16. Upon information and belief, the alleged debt that Portfolio was attempting to collect was a Boston store credit account, originally issued by Comenity and currently owned by Portfolio, and used only for personal, family or household purposes including purchases of personal and home goods at Boston department stores.

17. Comenity and Portfolio are two distinct business entities.

18. Exhibit A lists Comenity's address directly above Portfolio's name on Exhibit A.

19. Listing Comenity's address on Exhibit A directly above the current creditor's name is a material false, misleading or confusing statement.

20. On or about November 2, 2016, Portfolio mailed a debt collection letter to Plaintiff Bushberger regarding an alleged debt, allegedly originally owed to "Original Creditor: SYNCHRONY BANK" ("Synchrony") and "Creditor to Whom Debt is Owed: Portfolio Recovery Associates, LLC" ("Portfolio"). A copy of this letter is attached to this complaint as Exhibit B.

21. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

3

22. Upon information and belief, Exhibit B is a form debt collection letter used by Portfolio to attempt to collect alleged debts.

23. Exhibit B lists the address of the original creditor, Synchrony, directly above the statement of the creditor to whom the debt is owed as follows:

```
Seller: SYNCHRONY BANK
Merchant: TJX
Original Creditor: SYNCHRONY BANK
Original Creditor Address: P.O. BOX 965033, ORLANDO FL 32896-5033
Creditor to Whom Debt is Owed: PORTFOLIO RECOVERY ASSOCIATES, LLC
```

24. Upon information and belief, the alleged debt that Portfolio was attempting to collect was a TJMaxx store credit account, originally issued by Synchrony and currently owned by Portfolio, and used only for personal, family or household purposes including purchases of personal and home goods at Boston department stores.

25. Synchrony and Portfolio are two distinct business entities.

26. Exhibit B lists Synchrony's address directly above Portfolio's name on Exhibit B.

27. Listing Synchrony's address on Exhibit B directly above the current creditor's name is a material false, misleading or confusing statement.

### *Vega Letters*

28. On or about June 7, 2016, Portfolio mailed a debt collection letter to Plaintiff Vega regarding an alleged debt, allegedly originally owed to "Original Creditor: CAPITAL ONE BANK (USA) N.A." ("Capital One") and "Creditor to Whom Debt is Owed: Portfolio Recovery Associates, LLC" ("Portfolio"). A copy of this letter is attached to this complaint as Exhibit C.

29. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

4

30. Upon information and belief, Exhibit C is a form debt collection letter used by Portfolio to attempt to collect alleged debts.

31. Exhibit C lists the address of the original creditor, Capital One, directly above the statement of the creditor to whom the debt is owed as follows:

**Seller:** CAPITAL ONE BANK (USA) N.A.
**Original Creditor:** CAPITAL ONE BANK (USA) N.A.
**Original Creditor Address:** 4851 COX ROAD, GLEN ALLEN VA 23060
**Creditor to Whom Debt is Owed:** Portfolio Recovery Associates, LLC.

32. Upon information and belief, the alleged debt that Portfolio was attempting to collect was a personal credit card account, originally issued by Capital One and currently owned by Portfolio, and used only for personal, family or household purposes.

33. Capital One and Portfolio are two distinct business entities.

34. Exhibit C lists Capital One's address directly above Portfolio's name on Exhibit C.

35. Listing Capital One's address on Exhibit C directly above the current creditor's name is a material false, misleading or confusing statement.

36. On or about June 7, 2016, Portfolio mailed a debt collection letter to Plaintiff Vega regarding an alleged debt, allegedly originally owed to "Original Creditor: HSBC BANK NEVADA N.A." ("HSBC") and "Creditor to Whom Debt is Owed: Portfolio Recovery Associates, LLC" ("Portfolio"). A copy of this letter is attached to this complaint as Exhibit D.

37. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

38. Upon information and belief, Exhibit D is a form debt collection letter used by Portfolio to attempt to collect alleged debts.

39. Exhibit D lists the address of the original creditor, HSBC, directly above the statement of the creditor to whom the debt is owed as follows:

5

**Seller:** CAPITAL ONE N.A.
**Original Creditor:** HSBC BANK NEVADA N.A.
**Original Creditor Address:** 26525 N. RIVERWOODS BLVD, SUITE 100, METTAWA IL 60045
**Creditor to Whom Debt is Owed:** Portfolio Recovery Associates, LLC.

40. Upon information and belief, the alleged debt that Portfolio was attempting to collect was a personal credit card account, originally issued by HSBC and currently owned by Portfolio, and used only for personal, family or household purposes.

41. HSBC and Portfolio are two distinct business entities.

42. Exhibit D lists HSBC's address directly above Portfolio's name on Exhibit D.

43. Listing HSBC's address on Exhibit D directly above the current creditor's name is a material false, misleading or confusing statement.

44. The unsophisticated consumer would mistakenly believe that the address listed in paragraphs 14, 22, 30, 38, from Exhibits A, B, C and D, was the address of the current creditor.

45. The unsophisticated consumer could consequently mistakenly attempt to contact the original creditor with questions, make payments to the wrong business entity, or write to the original creditor to dispute or verify the debt.

46. If the consumer sent a check to Comenity, HSBC, or Capital One instead of Portfolio, the payment would not satisfy the alleged debt owed to the correct creditor, Portfolio, who would be within its rights to continue collection efforts or even file a lawsuit to collect the debt.

47. In addition, the consumer may be barred from recovering a payment to the incorrect party by the voluntary payment doctrine. Even if the voluntary payment doctrine does not apply or would not be enforced, the logistical challenge of obtaining a refund would discourage consumers from attempting to recover their erroneous payment.

48. Additionally, if the consumer wrote to Comenity, HSBC or Capital One's address to dispute the debt or request verification, because Comenity/HSBC/Capital One no longer own the debt, the dispute or verification request would be futile and the thirty day window to dispute or request verification with Portfolio would likely pass before the consumer became aware of the error. The unsophisticated consumer would miss out on being able to validate the debt.

49. The language reproduced in paragraphs 14, 22, 30, 38, above, thus overshadows the FDCPA debt validation notice.

50. <u>Exhibits A - D</u> fail to clearly and unambiguously inform the unsophisticated consumer that, in order to invoke his or her right to require Portfolio to cease most collection activities until they provide verification of the debt, the consumer must make the request to Portfolio in writing. 15 U.S.C. § 1692g(a)(4), 1692g(a)(5).

51. The practical effect of the providing the address of the original creditor so prominently in the letter next to the name of the current creditor and debt collector is to discourage consumers from disputing debts in writing with Portfolio and instead send them to the wrong address.

52. Portfolio did not effectively convey to the consumers their rights under the FDCPA. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. 2003); *see also Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (a "debt collector violates the Act if it fails to convey the information required by the Act.").

53. Failure to provide the correct validation notice within five days of the initial communication with Plaintiff and the class is a *per se* violation of the FDCPA. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 2016 U.S. App. LEXIS 6361 *15-16 (7th Cir. Apr. 7,

7

2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).).

54. For purposes of Plaintiff's claim under 15 U.S.C. §§ 1692e and 1692e(10), Defendant's statement is a material violation of the FDCPA. A consumer who attempts to exercise validation rights with the wrong business entity at the wrong address does not effectively invoke his or her rights under 15 U.S.C. § 1692g(b):

> (b) **Disputed debts**
> If the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector *in writing* that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(emphasis added).

### *Lakkard Letter*

55. On or about December 8, 2016, Portfolio mailed a debt collection letter to Plaintiff Lakkard regarding an alleged debt, allegedly owed to Portfolio and originally owed to "Synchrony Bank" ("Synchrony"). A copy of this letter is attached to this complaint as <u>Exhibit E</u>.

56. The alleged debt identified in <u>Exhibit E</u> is an alleged credit card account, originally owed to Synchrony.

57. Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

58. Upon information and belief, Exhibit E is a form debt collection letter used by Portfolio to attempt to collect alleged debts.

59. Plaintiff used this credit card only for personal, family or household purposes, namely, purchases of household goods and services. Plaintiff did not open or use the credit card account for any business purpose.

60. The credit card account identified in Exhibit E was in default, closed, and upon information and belief, charged off by Synchrony before Synchrony sold the account to Portfolio. Upon information and belief, Synchrony sells only defaulted and charged off credit card accounts to debt buyers such as Portfolio.

61. Exhibit E states the following:

```
**The following is a breakdown of your balance since charge-off:
Total Amount of Debt Due at charge-off: $1,593.35
Total Amount of Transactions since charge-off:
    Interest: $0.00
    Non-Interest Charges/Fees or Balance Adjustments: $0.00
    Payments: $0.00
Total Now Due: $1,593.35
```

62. Exhibit E is confusing and misleading to the unsophisticated consumer.

63. Exhibit E threatens to collect "Interest" and "Non-Interest Charges/Fees or Balance Adjustments." Although the amounts of each in Exhibit E is $0.00, the letter implies that there could be interest or fees added to the debt in a future letter. *Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

9

Case 2:17-cv-00786-PP   Filed 06/02/17   Page 9 of 20   Document 1

64. Upon information and belief, Portfolio does not actually add interest and fees to consumer collection accounts.

65. Further, Portfolio does not and could not add any "fees" to Plaintiff's account.

66. Any purchases made with a personal credit card account were "consumer credit transactions" under the WCA, Wis. Stat. §§ 421-427.

67. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

68. Credit card transactions are, by definition, "transactions pursuant to open-end credit plans." Wis. Stat. § 421.301(27)(a).

69. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

70. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

71. Because credit card transactions are consumer credit transactions, <u>Exhibit E</u> falsely states or implies that Portfolio has a right to add collection fees to the debt.

10

72. Even if a provision of any agreement between Plaintiff and the original creditor would purport to permit Portfolio to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

73. The alleged debt has been accelerated and sold to a debt buyer, Portfolio. There are no fees that could conceivably be added to Plaintiff's alleged debt.

### *Meyer Letter*

74. On or about August 2, 2016, PRA mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to PRA and originally owed to "CITIBANK, N.A." ("Citibank"). A copy of this letter is attached to this complaint as <u>Exhibit F</u>.

75. The alleged debt identified in <u>Exhibit F</u> is an alleged credit card account, originally owed to Citibank and purchased by PRA. It was a "Sears"-branded credit card.

76. Plaintiff used this credit card only for personal, family or household purposes, namely, purchases of household goods and services, including purchases at Sears stores. Plaintiff did not open or use the credit card account for any business purpose.

77. The credit card account identified in <u>Exhibit F</u> was in default, closed, and upon information and belief, charged off by Citibank before Citibank sold the account to PRA.

78. Upon information and belief, <u>Exhibit F</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

79. Upon information and belief, <u>Exhibit F</u> is a form debt collection letter used by PRA to attempt to collect alleged debts.

80. <u>Exhibit F</u> states that the "Balance" of the account is "$8112.50."

81. <u>Exhibit A</u> then states the following:

**Account Offers**

*Pay The Full Balance* OR *Choose A Savings Plan Below*

- 1 Payment of $8,112.50
- 6 Monthly Payments of $1,352.08
- 12 Monthly Payments of $676.04

Your account will be considered "Paid in Full" after your final payment is successfully posted.

- 1 Payment of $6,490.00 and SAVE $1,622.50
- Pay $1,149.27 for 6 consecutive months and SAVE $1,216.88
- Pay $608.44 for 12 consecutive months and SAVE $811.22

Your account will be considered "Settled in Full" after your final payment is successfully posted.

82. The "Pay The Full Balance" 6 and 12 monthly payment options in <u>Exhibit F</u> are confusing to the unsophisticated consumer.

83. If a consumer pays "$,1352.08 for 6 months" or "$676.04 for 12 months" the consumer will have paid PRA a total of $8,112.48. This amount is less than the stated Balance of $8,112.50.

84. It is not clear whether the consumer would have to pay the additional balance at the end of the payment plan. Unlike the "Savings Plan" options which expressly state how much the money the consumer would "**SAVE**," the 6 and 12 Month "Pay The Full Balance" options do not identify any amount that the consumer would "**SAVE**."

85. Moreover, the "Savings Plan" options disclose that "Your account will be considered 'Settled in full' after your final payment is posted."

86. The "Settled in full" designation refers to credit reporting. An account that is "Settled in full" is a negative item in a consumer's credit file.

87. In contrast, the 6 and 12 month pay the full balance options state: "Your account will be considered 'Paid in full' after your final payment is posted."

12

88. "Paid in full" also refers to credit reporting. A delinquent account that is "Paid in full" is also a negative item, but it has a less negative impact on a consumer's creditworthiness than a settled account does. Thus, all other variables being equal, a consumer who pays off a collection account in full would end up with a higher "credit score" than one who settles the same account.

89. If a consumer successfully completed 6 or 12 monthly payments, it is not clear whether she would have to also pay the remaining balance in order for the account to be reported as "Paid in full," or whether PRA would actually report the account as "Settled in full" due to the remaining balance, or whether PRA would forgive the remaining balance and still report the account as "Paid in full."

90. The consumer would be at a loss to determine the actual effects, on both the balance and her credit, of doing exactly what PRA told her to do.

91. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

92. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

93. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

94. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist.

13

95. Wis. Stat. § 427.104(1)(L) also specifically prohibits a debt collector from "[t]hreaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

96. Plaintiffs were confused by Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E and Exhibit F.

97. The unsophisticated consumer would be confused by Exhibit A, Exhibit B, Exhibit C, Exhibit D and Exhibit E.

98. Plaintiffs had to spend time and money investigating Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E and Exhibit F.

99. Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiffs on the consequences of Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E and Exhibit F.

100. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan*

*Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

101. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

## COUNT I – FDCPA

102. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

103. Count I is brought on behalf of Plaintiffs Bushberger and Vega.

104. <u>Exhibits A - D</u> fail to unambiguously inform the consumer that, in order to invoke his or her right to obtain validation of the debt, the consumer must make the request in writing to Portfolio, not the original creditor. 15 U.S.C. § 1692g(a)(4), g(a)(5).

105. Defendant violated 15 U.S.C. §§ 1692g, 1692g(a), 1692g(b) and 1692e(10).

## COUNT II – FDCPA

106. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

107. Count II is brought on behalf of Plaintiffs Bushberger and Vega.

108. <u>Exhibits A - D</u> list the address of the original creditor of the debt next to the name of the current owner of the debt.

109. The language in Portfolio's letter is false, misleading and confusing to the unsophisticated consumer. If the unsophisticated consumer sent payment to the listed address, the payment would not satisfy the alleged debt owed to the correct creditor, who would be within its rights to continue collection efforts or even file a lawsuit to collect the debt.

110. Defendant has therefore violated 1692e, 1692e(2) and 1692e(10).

## COUNT III – FDCPA

111. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

112. Count III is brought on behalf of Plaintiff Lakkard.

113. The references in <u>Exhibit E</u> to "Interest," "Fees," "Non-Interest Charges" and "Balance Adjustments" are false, misleading and confusing.

114. Portfolio threatened to add interest and fees to Plaintiff's debts when Portfolio is not entitled to any fee and does not add interest to accounts such as Plaintiff's.

16

Case 2:17-cv-00786-PP   Filed 06/02/17   Page 16 of 20   Document 1

115. Portfolio's misrepresentation of the amounts it would attempt to collect, is an unfair and/or unconscionable method by which to try and collect an alleged debt.

116. As these statements are threatening and/or confusing to the unsophisticated consumer recipient so as to falsely imply that the creditor is entitled to receive a collection fee, they are an unfair and/or unconscionable method for attempting to collect a debt.

117. The unsophisticated consumer would be confused by the nebulous references in Portfolio's letter to "Fees," "Non-Interest Charges" and "Balance Adjustments" and would have no idea what those charges are, potentially could be, or whether they would be legitimate.

118. Portfolio violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f and 1692f(1).

## COUNT IV -- WCA

119. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

120. Count IV is brought on behalf of Plaintiff Lakkard.

121. Exhibit E threatens to enforce a right to a collection fee, even though Defendant knew or should have had reason to know that no such right existed at the time the letters were sent.

122. Exhibit E also threatens to collect interest, even though Portfolio does not add interest to accounts such as Plaintiff's.

123. Portfolio violated Wis. Stat. §§ 427.104(1)(j) and 427.104(1)(L).

## COUNT V – FDCPA

124. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

125. Count V is brought on behalf of Plaintiff Meyer.

17

126. The 6 month and 12 month "pay in full" options on Exhibit F are facially confusing to the unsophisticated consumer.

127. Six or twelve consecutive monthly payments of the listed rates do not add up to the balance of the debt.

128. It is not possible to determine whether the consumer is responsible for the remaining balance, or whether the account is completely resolved, or whether the account would be reported to CRAs as paid in full or settled.

129. Portfolio violated 15 U.S.C. §§ 1692e, 1692e(2)(a), and 1692e(10).

## CLASS ALLEGATIONS

130. Plaintiffs bring this action on behalf of three classes.

131. Class One consists of (a) all natural persons in the State of Wisconsin (b) who were sent an initial collection letter in the form represented by Exhibits A - D to the complain in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between June 2, 2016 and June 2, 2017, inclusive, (e) that was not returned by the postal service. Plaintiffs Bushberger and Vega are the designated representatives of Class One, which shall be called the "Wrong Address" class.

132. Class Two consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit E to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between June 2, 2016 and June 2, 2017, inclusive, (e) that was not returned by the postal service. Plaintiff Lakkard is the designated representative of Class Two, which shall be known as the "Interest and Fees" class.

18

133. Class Three consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit F</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between June 2, 2016 and June 2, 2017, inclusive, (e) that was not returned by the postal service. Plaintiff Meyer is the designated representative of Class Three, which shall be known as the "Full Balance" class.

134. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

135. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692f and 1692f(1), 1692g, 1692g(a), 1692g(b), Wis. Stat. §§ 427.104(1)(j) and 427.104(1)(L).

136. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

137. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

138. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

139. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: June 2, 2017

                                                      **ADEMI & O'REILLY, LLP**

By:    s/ John D. Blythin
         Shpetim Ademi (SBN 1026973)
         John D. Blythin (SBN 1046105)
         Mark A. Eldridge (SBN 1089944)
         Denise L. Morris (SBN 1097911)
         3620 East Layton Avenue
         Cudahy, WI 53110
         (414) 482-8000
         (414) 482-8001 (fax)
         sademi@ademilaw.com
         jblythin@ademilaw.com
         meldridge@ademilaw.com
         dmorris@ademilaw.com